UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LYDIA HOWRILKA,

                 Plaintiff-Counterclaim Defendant,

                                            Index No.: 15-cv-1113-KAM-RER

      -against-

CITY OF NEW YORK, P.O. LAWRENCE
BOSCH, Shield No. Unknown, Tax Registry No.     **ANSWER WITH**
933652, JOHN DOES 1 and 2, Shield Nos.         **COUNTERCLAIMS**
Unknown, Tax Registry Nos. Unknown,

                 Defendants,

      -and-

ARISLEYDA URENA,

                 Defendant-Counterclaimant.
--------------------------------------------------------X

      Defendant, ARISLEYDA URENA, by her attorney, Timothy C. Parlatore, Esq., answering Plaintiff LYDIA HOWRILKA's Complaint and counterclaiming against Plaintiff respectfully alleges as follows:

    1.  Admits the allegations contained in paragraph 1, insofar as they allege that Plaintiff commenced this action and was previously arrested, but denies the allegation that this arrest was made without probable cause.

    2.  Admits the allegations contained in paragraph 2, insofar as they allege that Plaintiff commenced this action against Defendant-counterclaimant, but denies the remainder.

    3.  Denies the allegations contained in paragraph 3 and states affirmatively that no claims have been raised against Defendant-Counterclaimant that arise under federal law and that she has been improperly joined with the municipal defendants.

    4.  Admits the allegations contained in paragraph 4.

5.  Lacks information sufficient to form a belief as to the allegations contained in paragraph 5.

6.  Lacks information sufficient to form a belief as to the allegations contained in paragraph 6.

7.  Lacks information sufficient to form a belief as to the allegations contained in paragraph 7.

8.  Lacks information sufficient to form a belief as to the allegations contained in paragraph 8.

9.  Lacks information sufficient to form a belief as to the allegations contained in paragraph 9.

10. Lacks information sufficient to form a belief as to the allegations contained in paragraph .

11. Denies the allegations contained in paragraph 11, except to admit that Defendant-counterclaimant is a citizen of the State of New York.

12. Lacks information sufficient to form a belief asto the allegations contained in paragraph 12.

13. Lacks information sufficient to form a belief asto the allegations contained in paragraph 13.

14. Denies the allegations contained in paragraph 14 and states affirmatively that the illegal actions of Ms. Howrilka which resulted in her lawful arrest occurred after she had been terminated from her position at the Academy for Language and Technology ("ALT").

15. Denies the allegations contained in paragraph 15, except to admit that Defendant-counterclaimant was the principal of ALT when Ms. Howrilka was terminated for failure to meet the required minimum standards.

16. Denies the allegations contained in paragraph 16, except to admit that after her termination, Ms. Howrilka filed numerous frivolous and retaliatory complaints against Defendant-counterclaimant.

17. Admits the allegations contained in paragraph 17, insofar as it alleges that Ms. Howrilka engaged in an extended online campaign to harass, defame, and injure Defendant-counterclaimant, but denies the implication that Ms. Howrilka's "concerns" were legitimate or made in good faith.

18. Denies the allegations contained in paragraph 18, except to admit that Defendant-counterclaimant did communicate to Officer Bosch her legitimate concerns about Ms. Howrilka's illegal and disturbing behavior.

19. Denies the allegations contained in paragraph 19.

20. Denies the allegations contained in paragraph 20.

21. Admits the allegations contained in paragraph 21, insofar as it alleges that Officer Bosch determined that probable cause existed to arrest Ms. Howrilka.  Denies the remainder.

22. Lacks information sufficient to form a belief as to the allegations contained in paragraph 22.

23. Lacks information sufficient to form a belief as to the allegations contained in paragraph 23.

24. Lacks information sufficient to form a belief as to the allegations contained in paragraph 24.

25. Lacks information sufficient to form a belief as to the allegations contained in paragraph 25.

26. Defendant-counterclaimant repeats and realleges the admissions, denials, and affirmative statements contained in paragraphs 1 through 25, as if fully set forth herein.

27. Lacks information sufficient to form a belief as to the allegations contained in paragraph 27.

28. Denies the allegations contained in paragraph 28.

29. Lacks information sufficient to form a belief as to the allegations contained in paragraph 29.

30. Denies the allegations contained in paragraph 30.

31. Denies the allegations contained in paragraph 31.

32. Defendant-counterclaimant repeats and realleges the admissions, denials, and affirmative statements contained in paragraphs 1 through 31, as if fully set forth herein.

33. Lacks information sufficient to form a belief as to the allegations contained in paragraph 33.

34. Denies the allegations contained in paragraph 34.

35. Lacks information sufficient to form a belief as to the allegations contained in paragraph 35.

36. Denies the allegations contained in paragraph 36.

37. Denies the allegations contained in paragraph 37.

38. Defendant-counterclaimant repeats and realleges the admissions, denials, and affirmative statements contained in paragraphs 1 through 38, as if fully set forth herein.

39. Denies the allegations contained in paragraph 39.

40. Denies the allegations contained in paragraph 40.

41. Denies the allegations contained in paragraph 41.

## DEFENSES

In further answer to the Complaint, and as and for separate, affirmative defenses, without assuming the burden to prove that which properly falls upon Plaintiff, Defendant avers:

### FIRST DEFENSE

Plaintiff's claims are barred in whole or in part for failure to state a claim for relief.

### SECOND DEFENSE

Plaintiff's claims are barred because Defendant's actions were privileged.

### THIRD DEFENSE

Plaintiff's claims are barred by the Statute of Limitations.

### FOURTH DEFENSE

Plaintiff's claims are barred because there is no Federal Jurisdiction over the asserted claims.

### FIFTH DEFENSE

Plaintiff's claims are barred by the Doctrine of Laches

### SIXTH DEFENSE

Plaintiff's claims are defective because the statements made by Defendant to members of the New York City Police Department were true or substantially true.

### SEVENTH DEFENSE

Plaintiff's alleged damages, if any, were caused by Plaintiff's conduct.

## COUNTERCLAIMS OF ARISLEYDA URENA AGAINST LYDIA HOWRILKA

As and for her Counterclaims against Plaintiff/Counterclaim Defendant Lydia Howrilka ("Howrilka"), Arisleyda Urena ("Urena") alleges as follows:

### Preliminary Statement

1.   This case was brought by Ms. Howrilka as part of a continuing campaign to retaliate against Ms. Urena after Ms. Howrilka's termination from the Department of Education. Since her lawful termination, Ms. Howrilka has demonstrated a continuously escalating and alarming course of conduct targeting Ms. Urena and attempting to damage her, both personally and professionally by defaming her online and in email communications with anyone who will listen.  These actions were designed to, and have caused Ms. Urena to suffer from severe emotional distress.

### Background

2.   Ms. Howrilka was a probationary teacher in the New York City public school system, working at the Academy for Language and Technology ("ALT") in the Bronx, where Ms. Urena was the principal.

3.   Ms. Howrilka experienced significant problems in her employment, as she was unable to successfully complete even the most basic of tasks for a teacher.  For example, on multiple occasions, she found herself unable to handle the class and therefore decided to run out of the classroom crying, abandoning the students.  At first, Ms. Urena covered for Ms. Howrilka, but ultimately was instructed to write her up for her unacceptable conduct.

4.   Ms. Howrilka's behavior continued to spiral out of control until the week of the Regent's exam, when Ms. Howrilka sent a completely inappropriate email to the students,

including the special education students, railing against the administration and blaming Ms. Urena.  Ms. Howrilka's actions disrupted many of the students during the already stressful Regent's Exam week, and led the teachers and staff to the collective conclusion that Ms. Howrilka was a distraction and was harmful to the students.

5.   Ms. Howrilka was ultimately terminated from her position June 2013.

6.   In the wake of her termination, Plaintiff developed an unhealthy fixation on Ms. Urena, blaming Ms. Urena for Ms. Howrilka's failures as a teacher.  However, rather than address her unfounded complaints through the ordinary channels, Ms. Howrilka instead embarked on a campaign to terrorize, harass, defame, and damage Ms. Urena.

7.   Where Ms. Howrilka had already begun with her completely inappropriate email to the students, she continued to escalate after her termination.  She began emailing every Department of Education ("DOE") official that she could find an email address for, all for the purpose of defaming and attacking Ms. Urena and damaging her in her profession and imperiling her employment.

8.   When she didn't get the results she desired from her email campaign, Ms. Howrilka expanded her scope of attack to the internet, where she published numerous false and defamatory statements about Ms. Urena on various blogs.  In an effort to fraudulently make it appear as if multiple people were complaining about Ms. Urena, Ms. Howrilka made liberal use of false identities.  However, despite these attempts, the reality is that Ms. Howrilka was the only person complaining about Ms. Urena.

9.   Simultaneously to the above described conduct, Ms. Howrilka filed countless Freedom of Information Law Requests ("FOIL Requests") related to all aspects of Ms. Urena's record and the records of ALT, in an effort to find some evidence of wrongdoing

by Ms. Urena.  Using this information, Ms. Howrilka made countless unsubstantiated and invented complaints against Ms. Urena to the DOE.

10. In September, 2013, Ms. Urena was offered a promotion to the position of Director of the Office of School Quality.  She accepted the position and left ALT in November 2013.  Meanwhile, Ms. Howrilka's campaign continued unabated.

**Facts Underlying Plaintiff's Complaint**

11. As Ms. Howrilka's bizarre and obsessive behavior continued to escalate, Ms. Urena began to have legitimate fears for her employment, her safety, and the safety of her family.

12. Around this time, Ms. Urena was informed that Ms. Howrilka suffers from Asperger's Syndrome ("AS"), a developmental disorder affecting the ability to socialize and communicate.  Ms. Urena learned that people with AS can develop overriding obsessions that often lead to stalking offenses and, potentially, violence.  This information only escalated Ms. Urena's already heightened concerns.

13. The final breaking point came when Ms. Howrilka called Ms. Urena's home and spoke to Ms. Urena's young son.  Almost immediately thereafter, Ms. Urena contacted the New York City Police Department.

14. On February 21, 2014, Ms. Urena went to the 84th Precinct in Brooklyn and related all of the factual information of Ms. Howrilka's campaign against her to members of the New York City Police Department.

15. On March 4, 2014, approximately two weeks after Ms. Urena's complaint, Ms. Howrilka was arrested.

16. Although the officers had probable cause to make the arrest, the Kings County District Attorney's Office ("KCDAO") declined to prosecute under the higher legal standard that they did not feel that they could prove the case beyond a reasonable doubt. On information and belief, this is due, in part, to Ms. Howrilka's use of false identities and the KCDAO did not want to expend the resources to unmask these identities for what they considered to be a non-violent misdemeanor case.

17. Ms. Howrilka was released after spending only a few hours in police custody, although she later lied in an online posting, falsely claiming that she had "spent days in the local police precinct on bogus charges before being transported to Central Booking for a night or two."

### Ms. Howrilka's Continuing Attacks

18. As a direct result of Ms. Howrilka's campaign of terror against Ms. Urena, compounded by the KCDAO's refusal to protect Ms. Urena from these attacks, Ms. Urena suffered severe emotional distress. Knowing that her pension had already vested and not wanting to suffer Ms. Howrilka's continued attacks, Ms. Urena voluntarily resigned from the Department of Education on August 15 of 2014.

19. Unable to continue to attack Ms. Urena at her place of business, Ms. Howrilka returned to the internet to further her attacks on Ms. Urena.

20. In or around November 2014, Ms. Howrilka, under the shroud of an "anonymous contributor" wrote to the website "Don't Tread on Educators" (dtoe.org) to nominate Ms. Urena for the "Administrators In Need Of Improvement" list.[1] The resulting article, which

---

[1] A copy of the article that was published as a result of Ms. Howrilka's defamatory statements is annexed hereto at Exhibit "A."

includes lengthy quotes from Ms. Howrilka, is based entirely based on Ms. Howrilka's defamatory statements to the blog administrator.  This article contains numerous false and defamatory statements made by Ms. Howrilka against Ms. Urena, including, but not limited to:

a.  Ms. Urena's "enemies have spent days in the local police precinct on bogus charges before being transported to Central Booking for a night or two." – This clearly false statement attempts to inflate the few hours Ms. Howrilka spent in custody on a lawful arrest to make it seem as if she were held for several days.

b.  Ms. Urena "conspired to terminate over 50 professionals, may of who Ms. Urena personally hired to work under her." – This completely fabricated statement is virtually impossible, as the school never had more than 23 teachers.

c.  Ms. Urena terminated a guidance counselor "when this counselor discovered major discrepancies in the transcripts of seniors who were missing critical core and elective classes needed for a Regents diploma." – The DOE investigated this frivolous claim and closed the investigation as unfounded.

d.  Ms. Howrilka provides a heavily redacted copy of the inappropriate email that she sent to the students during Regents week, editing out the portions that resulted in her termination, falsely claiming she had been "victimized" by Ms. Urena.

e.   Ms. Howrilka provides partial statistics, which have been fraudulently manipulated to give the false impression that ALT was not performing as well as other schools and that there was great dissatisfaction with Ms. Urena's performance by the teachers.  In reality, the statistical reports and surveys show that Ms. Urena was exceedingly successful both in terms of student performance, as well as satisfaction by surveys of teachers, parents and students.[2]

21. Moreover, in this and other online postings, Ms. Howrilka used a photograph of Ms. Urena that she unlawfully obtained from the school.  As Ms. Urena is a private person, who does not use social media, this was designed to increase Ms. Urena's recognizability in an effort to further publically shame and damage her.

22. Ms. Howrilka's relentless psychological assault on Ms. Urena has caused her to suffer from severe emotional distress, which manifests itself in anxiety attacks, fear of public places, loss of sleep, acne, and hair loss.

## AS AND FOR THE FIRST COUNTERCLAIM

### Defamation *per se*

23. Counterclaimant repeats and realleges all the statements contained in the above paragraphs as if fully realleged herein.

24. On or about November, 2014, Ms. Howrilka published non-privileged, false and defamatory statements about Ms. Urena to and on the website "Don't Tread on Educators" (dtoe.org).  These statements include, but are not limited to:

---

[2] Copies of statistical reports are annexed hereto at Exhibits "B," "C," and "D."

a.  Ms. Urena's "enemies have spent days in the local police precinct on bogus charges before being transported to Central Booking for a night or two."

b.  Ms. Urena "conspired to terminate over 50 professionals, may of who Ms. Urena personally hired to work under her."

c.  Ms. Urena terminated a guidance counselor "when this counselor discovered major discrepancies in the transcripts of seniors who were missing critical core and elective classes needed for a Regents diploma."

d.  That Ms. Howrilka had been "victimized" by Ms. Urena based on a fraudulently manipulated copy of a document that resulted in her termination.

e.  Ms. Howrilka provides partial statistics, which have been fraudulently manipulated to give the false impression that ALT was not performing as well as other schools and that there was great dissatisfaction with Ms. Urena's performance by the teachers.

25. Each statement was false when made and there was no basis to make public statements implying that Ms. Urena had engaged in any of the alleged misconduct.

26. Ms. Howrilka gave these false statements intentionally, with knowledge of their falsity, with reckless disregard of the truth, with negligent disregard for the truth, and/or with actual malice toward Ms. Urena, intending to injure Ms. Urena and to deprive her of her good name and reputation.

27. Ms. Howrilka knew or should have known that her statements were false at the time of the publication.

28. Ms. Howrilka's statements were published on the internet and were widely read by Ms. Urena's family, neighbors, friends, co-workers, and diverse other persons.

29. Ms. Howrilka's statements, each on its face impugned Ms. Urena's reputation, tended to expose Ms. Urena to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her profession as a Department of Education administrator.

30. Ms. Howrilka's statements each has directly and proximately caused Ms. Urena damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, and/or occupation.

31. All the false statements detailed above constitute defamation per se because they call into question the plaintiff's competence to perform adequately in her profession and allege serious criminal misbehavior by the plaintiff.

32. Ms. Urena has been damaged in an amount to be determined at trial, but in no event less than $1,000,000.

33. In addition, because Ms. Howrilka's conduct was so willful, wanton and malicious, punitive damages should be awarded in an amount to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR THE SECOND COUNTERCLAIM

### Intentional Infliction of Emotional Distress

34. Counterclaimant repeats and realleges all the statements contained in the above paragraphs as if fully realleged herein.

35. From the time of her termination in June 2013 and continuing through the present, Ms. Howrilka has intentionally or recklessly engaged in a continuous course of conduct which was designed to cause severe emotional distress to Ms. Urena.

36. This continuous course of conduct included continuous emails to Ms. Urena, her employer and colleagues, several online postings designed to defame and publically humiliate Ms. Urena, phone calls to her home, and the filing of a knowingly frivolous lawsuit. This course of conduct is so outrageous and atrocious that it is utterly intolerable in a civilized community.

37. While much of this conduct occurred over one year ago, it was all part of a continuous pattern of conduct and can therefore be considered, for statute of limitations purposes, to be a single, continuous transaction. Moreover, there have been at least two separate online postings within the past year which alone would be actionable, even if the entire course of conduct were not.

38. Ms. Howrilka has intentionally or recklessly engaged in extreme and outrageous conduct, which was intended to cause severe emotional distress to Ms. Urena. And, in fact, Ms. Howrilka's extreme and outrageous conduct in continuously targeting Ms. Urena has caused her to suffer severe emotional distress.

39. Ms. Urena has been damaged in an amount to be determined at trial, but in no event less than $1,000,000.

40. In addition, because Ms. Howrilka's conduct was so willful, wanton and malicious, punitive damages should be awarded in an amount to be determined at trial, but in no event less than $1,000,000.

WHEREFORE, Counter-Claimant Arisleyda Urena demands judgment as follows:

a. Dismissal of Plaintiff's Complaint in its entirety against Ms. Urena;

b. An award of compensatory and punitive damages to Ms. Urena in an amount to be determined at trial.

c. An award of the costs and disbursements of this action;

d. Such other, further and different relief as to the Court may seem just and proper.

Dated: July 14, 2015
New York, New York

Respectfully submitted,

/s/ Timothy C. Parlatore

Timothy C. Parlatore, Esq.
*Attorney for Arisleyda Urena*
260 Madison Avenue, 22nd Floor
New York, New York 10016
212-679-6312
212-202-4787 Facsimile
tim@parlatorelaw.com